**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1414
_____

LUIS GUSTAVO CARIAS-ESTRADA

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. 208-373-742)
Immigration Judge: Jason L. Pope
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
January 18, 2023
_____

Before: AMBRO[*], PORTER, and FREEMAN,
*Circuit Judges*.

(Filed: March 8, 2023)

_____

OPINION[**]
_____

---

[*] Judge Ambro assumed senior status February 6, 2023.
[**] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Luis Gustavo Carias-Estrada appeals from the denial of his application for asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231(b)(3), and for protection under the regulations implementing the Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").[1] Because the Immigration Judge ("IJ") properly considered country conditions and Carias-Estrada fails to identify a cognizable social group subject to persecution, we will affirm.

I

Carias-Estrada is a twenty-two-year-old native and citizen of Guatemala. On August 2, 2015, the Department of Homeland Security ("DHS") issued him a notice to appear, charging him with removability as an alien present without admission or parole. 8 U.S.C. § 1182(a)(6)(A)(i). Carias-Estrada admitted the factual allegations and conceded the charge. The IJ sustained the charge, and Carias-Estrada applied for asylum, withholding of removal, and protection under the CAT.

Carias-Estrada claimed to have suffered past persecution in Guatemala and to have a well-founded fear of future persecution based on his political opinion and membership in four particular social groups.

---

[1] Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for the United States Nov. 20, 1994).

The parties do not dispute Carias-Estrada's unfortunate history as a target of violence. At age fourteen, he was accosted by members of the Gang 18, or Maras 18, who sought to intimidate him into joining their ranks, once going so far as to punch him in the eye. These instances of intimidation occurred six or seven times before he left Guatemala. And since 2016, the gang has extorted him for $200-250 per month, threatening to harm his family if he does not pay. Since his detention, he has not paid, and he says the gang is waiting for him to return to collect the unpaid balance. Carias-Estrada contends that he cannot seek the protection of police from such dangers, as the police are corrupt and would inform gang members of his complaints.

As to his political opinions, Carias-Estrada acknowledges that he is not and has never been a member of a Guatemalan political party and has never publicly spoken or published writings in opposition to the gangs. He did attend political rallies with his mother, but none related to gang issues, and he was not harmed for participating in the rallies nor would he expect to be so upon return.

The IJ found Carias-Estrada's claims to be credible, sufficiently corroborated, and timely. However, the IJ denied his application for asylum, withholding of removal, and protection under the CAT, concluding that Carias-Estrada (i) failed to establish past persecution or a reasonable fear of future persecution; (ii) failed to establish a cognizable particular social group; and (iii) failed to establish he would likely be subject to torture if returned to Guatemala. On appeal, the Board of Immigration Appeals ("the Board") dismissed Carias-Estrada's appeal, adopting and affirming the IJ's decision in its entirety. This appeal followed.

## II[2]

### A

To obtain asylum and withholding of removal, an applicant bears the burden of demonstrating a "well-founded fear of persecution" based on his political opinion and/or "membership in a particular social group." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544 (3d Cir. 2018); 8 U.S.C. §§ 1158(a)(2)(A), 1158(b)(1). That social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L.*, 894 F.3d at 540. Social distinction is found where "the alien's home society actually does recognize that group as being . . . 'distinct' and identifiable[.]" *Id.* at 553. Particularity in this context means "that the group has defined boundaries" rendering it "capable of a common, accepted definition." *Id.* at 546, 553. Importantly, the particular social group must have existed before the complained-of persecution began. *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003).

---

[2] The Board has jurisdiction to entertain appeals from IJ decisions under 8 C.F.R. §§ 1003.1(b)(3), 1003.2. We have jurisdiction for appeals of BIA orders under 8 U.S.C. § 1252. Venue is proper in this Court because the proceedings before the IJ were completed in Elizabeth, New Jersey. *Id*. § 1252(b)(2). We review the Board's decision under the deferential substantial-evidence standard. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under this standard, we will reverse only if any reasonable factfinder would be compelled to conclude to the contrary. *Id.*; 8 U.S.C. § 1252(b)(4)(B). Factual findings "will be upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003). Legal conclusions are reviewed de novo. *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339 (3d Cir. 2008).

Particularity is "essentially an objective inquiry," asking whether a "reasonable person could look at the proposed definition of a social group and determine who falls within it," whereas social distinction "poses a more subjective question, whether the alien's home society actually does recognize that group as being a 'distinct' and identifiable group." *S.E.R.L.*, 894 F.3d at 553.

Those targeted for resisting gang recruitment are not generally recognized as members of a cognizable particular social group. *See, e.g.*, *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582 (3d Cir. 2011). Carias-Estrada thus varies the formula a bit, asking us to recognize four distinct social groups in which he claims membership: (1) "Guatemalan men who resisted gang recruitment while under the age of 21"; (2) "Guatemalan men with United States citizen family members"; (3) "Guatemalan men with siblings under the age of 21 who resist gang recruitment"; and (4) "Guatemalan men with older family members who are unable to assist in their protection from gang recruitment."[3] Joint App'x 186–88, 449, 467. Because each of these fails one or more requirements of immutability, particularity, or social distinction, none are viable.

Carias-Estrada's first social group, "Guatemalan men who resisted gang recruitment while under the age of 21," defines a group by past experience. We have previously recognized groups defined by past experiences where the past experience produced particularity and social distinction. *See Lukwago*, 329 F.3d 157. In *Lukwago*, a

_____

[3] On appeal, Carias-Estrada does not advance his argument below that he suffered persecution based on his political opinions. That argument is therefore waived. *See* Appellant's Br. 9 n.1.

Ugandan former child soldier pleaded a particular social group consisting of "children from Northern Uganda who are abducted and enslaved . . . and oppose their involuntary servitude." *Lukwago*, 329 F.3d at 171. Then, for the purposes of pleading a well-founded fear of future persecution, he proposed a group defined as "children from Northern Uganda who have escaped from involuntary servitude after being abducted and enslaved by [a Ugandan rebel group]." *Id.* at 174.

After finding no evidence in the record that the Ugandan government would have persecuted Lukwago as a former rebel fighter, we concluded that his proposed social group for the purposes of persecution by the rebels had "considerably more support in the record," because he adduced evidence that escapees were shunned in Ugandan society for fear that they would be targeted for violence. *Id.* at 176. We thus overturned the Board's refusal to recognize that group, as its decision was based on the mere fact of his no longer being a child and ignored the evidence of social distinction. *Id.* at 178.

Such shared past experiences, however, are meaningful to our analysis only to the extent that they affect particularity and social distinction—in short, where they are actually perceived in the applicant's society as a characteristic of the person.

Here, "Guatemalan men who resisted gang recruitment while under the age of 21" describes a past experience, but not one that defines a "cognizable particular social group." *S.E.R.L.*, 894 F.3d at 543. It is not shown to be particular nor to carry any lasting stigma or brand of social distinction. No evidence is provided that such men are readily identified nor identifiable within Guatemalan society as a unique group. Nor is such a group shown to have "existed before [Carias-Estrada's] persecution began." *Lukwago*,

6

329 F.3d at 172. Perhaps sensing this, Carias-Estrada attempts to reframe this proposed group as sharing the "common immutable characteristic of gender." Appellant's Br. at 21. But reducing the proposed group to "Guatemalan men" reads far too much out of the text. Rather, we take his proposed group at face value and find it to be invalid.

Carias-Estrada's third proposed group, "Guatemalan men with siblings under the age of 21 who resist gang recruitment," fares the same. No evidence is offered to establish the particularity or social distinction of having a sibling under 21 any more than being oneself under 21. It is related to a kinship tie—a sibling—but not in the sense recognized under our case law, where kinship is understood as membership in a family or clan whose members are persecuted for the fact of their membership. *See In re H-*, 21 I. & N. Dec. 337 (BIA 1996) ("The record before us makes clear not only that the Marehan [—a familial sub-clan in Somalia—] share ties of kinship, but that they are identifiable as a group based upon linguistic commonalities."). Carias-Estrada does not claim that either he or his brother would be persecuted for their family membership but rather for resistance to gang membership.

Indeed, each of Carias-Estrada's proposed groups fails for particularity and social distinction. Looking objectively at particularity, each proposed group offers not one "benchmark for determining group membership" but a combination of descriptors including, variously: age, nationality, familial relationships, citizenship status of relatives, disposition to joining gangs, and/or availability of aid from older relatives in resisting gang membership. *Id.* at 546–47. The "amorphous" combinations of traits offered here

7

make it unclear which are truly important to defining the group, and they come nowhere near to offering a "common, accepted definition" of a class. *Id.* at 546, 553.

As to social distinction, the proposed groups evince none. Admittedly, Carias-Estrada's descriptors may accurately capture his own personal history and that of some other young Guatemalan men, but whenever a proposed social group is based on a shared past experience rather than a heritable trait or a matter of conscience, the inquiry is at risk of lacking rigor. *See Velasquez v. Sessions*, 866 F.3d 188, 198 (4th Cir. 2017). By appending enough descriptors, one can always narrow a group to a small set of persons, or even to one person, but that does not afford the group social distinction or "recogni[tion], in the society in question, as a discrete class of persons." *S.E.R.L.*, 894 F.3d at 546. That is our standard, and Carias-Estrada does not persuade this Court that he has articulated such a class. He argues persuasively that young men such as himself are singled out for recruitment by gangs in Guatemala, but "a group's recognition for asylum purposes is determined by the perception of the society in question, rather than by the perception of the persecutor." *Id.* at 548. We are unpersuaded that any of the varied iterations of traits alleged to constitute distinct social groups here are salient in Guatemala.

8

Lacking immutability[4], particularity, and social distinction, Carias-Estrada's proposed groups are incognizable bases for identifying a persecuted social group. We decline to adopt any of them.[5]

B

Carias-Estrada next alleges that he will be tortured by or at the acquiescence of the Guatemalan government. He adduces scant support for this contention. The documents that he offers as evidence, consisting of reports from the United Nations, State Department, and U.S. Agency for International Development, paint an unfortunate picture of a country battling with poverty, crime, and violence. However, they offer nothing particular to his past experiences nor reasons for him to apprehend harm rising to the level of torture upon return. The only violence that he attests to having personally experienced was an isolated punch in the face. Drawing a bright line as to what constitutes torture or an equivalent to torture may, in some cases, be a conceptual

---

[4] The Board's denial rests upon determinations that Carias-Estrada's PSGs lack particularity and social distinction. As those conclusions were sufficient, it did not reach the question of their immutability. However, they are also mutable. Immutability describes those "characteristic[s]" that are "not capable of or susceptible to change," including those "that are technically immutable as well as those a person should not be required to change as a matter of conscience to avoid persecution." *Immutable*, Merriam-Webster's Third New International Dictionary (1993); *S.E.R.L.*, 894 F.3d at 544. These include, e.g., "sex, color, or kinship ties," or in some unique circumstances "a shared past experience such as former military leadership or land ownership," where such status defines a "cognizable particular social group." *S.E.R.L.*, 894 F.3d at 545. It is a question of "immutable characteristic[s]," not merely immutable experiences in the sense that every person's historical experience is temporally fixed and cannot be undone. *Id.* at 544.

[5] Because Carias-Estrada fails to qualify for asylum, he is "necessarily ineligible for withholding of removal" under 8 U.S.C. § 1231(b)(3), given the "more demanding" standard applicable to that form of relief. *See S.E.R.L.*, 894 F.3d at 544.

9

challenge. This is not one of those cases. Carias-Estrada has not presented this Court with an account of personal experiences with or targeting for torture that would render the IJ's ruling against him substantial error.

Even more, he still has not shown government acquiescence. "Acquiescence to torture requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it." *Valdiviezo-Galdamez*, 663 F.3d at 610. Carias-Estrada cannot claim that the police acquiesced in any crime against him, as he never filed an incident report or made them aware of the battery committed against him. A.R. 88–89.

Instead, Carias-Estrada points to general country conditions and alludes to "the Guatemalan government[']s involvement or acquiescence to torture, murder, and other violence." Appellant's Br. 28. But he cites nothing in particular to support this vague description. As the IJ concluded, the reports provided in the record do not paint a clear picture of willful blindness to corruption nor to the gangs but include stories of anti-corruption initiatives as well as shootouts with and arrests of gang members for extortion and other crimes. The IJ took due consideration of these accounts in his decision and found them to contradict Carias-Estrada's account of an acquiescent Guatemalan government.

The IJ's determinations as to the likelihood of torture and the acquiescence of the Guatemalan government showed considered reasoning and were supported by substantial evidence.

## III

We will deny the petition for review.